## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**JARRET MONTEZ WILSON, #48858**                                    **PLAINTIFF**

**v.**                                                    **CAUSE NO. 3:19cv190-RHW**

**DEMETRE APOSTOLIDIS, et al.**                                    **DEFENDANTS**

_____

### MEMORANDUM OF AUTHORITIES IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT

_____

**NOW COME** Defendants, Demetre Apostolidis, David King, Tyson Burleson, and

Sheriff Bryan Bailey, by and through their undersigned counsel of record, and in support of

their Motion for Summary Judgment, state as follows:

I.     **INTRODUCTION**

Plaintiff, Jarret Montez Wilson ("Wilson" or "Plaintiff"), proceeding *pro se* pursuant

to the Prison Litigation Reform Act ("PLRA")[1], filed his [1] Complaint with this Court on

March 18, 2019 against that foregoing Defendants and brings his claims pursuant to 42 U.S.C.

§ 1983. *Complaint* (**Exhibit 1**).  Plaintiff alleges that that Apostolidis, King and Burleson used

force against him during the booking process on December 6, 2018 and he claims that he did

not receive medical care for his injuries following the altercation.  He seeks the following

relief from this Court:

1.   Have my tooth replaced, by gum implant, not a plate.

---

[1] Plaintiff has at least one strike under the PLRA. *See Wilson v. King*, No. 2:13cv021-KS-MTP [Dkt. 15] (S.D. Miss. March 25, 2013).  Defendants in the case *Wilson v. Morris*, No. 1:14cv0236-JCG were granted summary judgment for Plaintiff's failure to exhaust the applicable grievance procedure. *See Id.* [Dkt. 29] (S.D. Miss. Jan. 26, 2016).

2. Allow me to bring assault charges against the inmates that are involved, and the Administration refuse to release the names of the inmates to be part of the documents.

3. The officers be fired that where (sic) involved for unprofessional conduct.

4. Award me for permanent damages and pain and suffering in the amount of $100,000.00 dollars.

5. That every staff member be ordered to wear I.D. badges for proper identification so they may be wearing identification for future reference and cases.

*Complaint*, pg. 5 of 5.

Per the following, Defendants submit that the record before this Court does not create any genuine issue of material fact sufficient to preclude the entry of judgment in their favor as a matter of fact and/or law. Because the Plaintiff cannot establish a *prima facie* case of liability against this Defendant as alleged, Plaintiff has failed to state a claim upon which relief can be granted and Defendants are entitled to dismissal with prejudice as to all claims against them.

II.    **STATEMENT OF FACTS**

Plaintiff was driving his vehicle intoxicated on September 14, 2017, when it is alleged that he "willfully, unlawfully and feloniously drive or otherwise [did] operate a motor vehicle while under the influence of an intoxicating liquor and drive or otherwise operate a motor vehicle with a blood alcohol concentration of (0.138%) and in negligent manner mutilated or disfigured the eye and leg of Jacob Austin Moore." *Brandon PD Records* (**Exhibit 2**), at RC 134. A Brandon Police Department body cam video of Plaintiff taken that night of Plaintiff (**Exhibit 3**) clearly shows Wilson missing a tooth on that day. *See Snippet of Video* (**Exhibit 4**), taken at minute 2:33 of the video.

Plaintiff was picked up by Agent Brad Chisolm with the United States on December 6, 2018 to be transported to the Rankin County Jail for booking on multiple warrants related to the earlier auto accident.  **Exhibit 2**, at RC 172-75.  During Plaintiff's transportation to the Rankin County Jail, Agent Chisolm contacted Investigator Tyson Burleson with the Rankin County Sheriff's Department and advised that "he was on the way to the jail with a Mr. Jarret Wilson" and that Wilson "was being violent and was threatening to kill Law Enforcement Officers and Jailers when his cuffs were removed."  *Inmate Records* (**Exhibit 5**), at RC 13. Agent Chisolm also stated that Wilson "posed a threat to LEO's and [Agent Chisolm] had also found guns at locations were [Wilson] previously slept."  *Id.*  Taking the threat seriously, Investigator Burleson informed booking officers at the Rankin County Jail of what he had been told about Wilson.  *Id.*

Demetre Apostolidis, a booking officer at the Rankin County Jail, went to the Sally Port upon Wilson's arrival to escort Plaintiff to the dress-out room and both Apostolidis and Burleson heard Plaintiff state, "I'm going to kill you."  *Inmate Records*, at RC 13; *Apostolidis Affidavit* (**Exhibit 7**), ¶ 2.  A video from the Rankin County Jail of Plaintiff's arrival in the Sally Port area is filed conventionally as **Exhibit 8** and a video of Plaintiff being escorted to the dress-out room by Apostolidis is filed conventionally as **Exhibit 9**.  Plaintiff was taken to the dress-out area so he could change into a Rankin County issued jumpsuit and be searched for weapons and/or contraband.  *Apostolidis Affidavit*, ¶ 3.  Wilson was in handcuffs and leg irons while being escorted to the dress-out room and there is no video in the room due to inmate privacy concerns.  *Id.*, ¶¶ 2-3.

Plaintiff was instructed numerous times to calm down and, when he appeared to comply, Apostolidis removed his leg irons, then his handcuffs.  *Id.*, ¶ 3.  Once Plaintiff's

handcuffs were removed, he charged at Burleson "head down and attempted to tackle the officer." *Id.*, ¶ 4. Burleson struck Plaintiff once to the side of his head stop the attack. *Id.*, ¶ 4; *Inmate Records*, at RC 13. Plaintiff began wildly throwing punches with both fists clinched and struck both Apostolidis and David King, also a booking officer at the Rankin County Jail. *Apostolidis Affidavit*, ¶ 5; *Inmate Records*, at RC 13. Apostolidis and King both used their TASER to control Plaintiff and were thereafter able to dress-out Plaintiff. *Id.* Plaintiff was in the dress-out room a total of four (4) minutes and 53 seconds, with the incident at issue lasting less time. *See* **Exhibit 9**.

Plaintiff was then escorted to a booking holding cell (*see* **Exhibit 10**, filed conventionally) and was thereafter filmed inside of that booking holding cell (*see* **Exhibit 11**, filed conventionally). Wilson was provided medical attention almost immediately after entering the booking holding cell (*see* **Exhibit 11**), which is confirmed by his medical records (**Exhibit 6,** at RC 22, 47-49). He was booked in after the incident, with his booking photograph also being taken after the incident and attached as **Exhibit 7-A**. *See Apostolidis Affidavit*, ¶ 6.

Plaintiff was charged with three felony counts of assaulting law enforcement officers related to the incident on December 6, 2018 (*see* **Exhibit 5**, at RC 09) and was indicted on those charges on April 29, 2019. *Criminal Pleadings* (**Exhibit 12**), at RC 127-28. Plaintiff pleaded guilty to assaulting Apostolidis on October 30, 2019. *See Criminal Transcript* (**Exhibit 13**). Specifically, the factual basis of the charge and guilty plea are provided in the transcript as follows:

> **MS. LEMON:** Your Honor, as to cause Number 30040, Count II, the State would prove, if we went to trial, that on or about December 6th, 2018, the Defendant here, Jarrett Montez Wilson, in Rankin County, did unlawfully, feloniously, purposely and knowingly attempt to cause and purposely, knowingly or

recklessly cause bodily injury to Rankin County Sheriff detention officer Demetri George –

**MR. HOIADAY:** Apostolides.

**MS. LEMON:**  Apostolides, by striking Officer Apostolides with a closed fist at the time said Officer Apostolides was a law enforcement officer with the Rankin County Sheriff's Department and acting within the course scope of his duties.

As to the other case, 30363, Count II, the State would prove that on or about September 14th, 2017, the Defendant, Jarrett Montez Wilson, in Rankin County, Mississippi, was the driver of a vehicle involved in an accident which resulted in the injuries to Jacob Austin Moore, specifically the injuries to the victim in this case were his eye and leg were injured and permanently disabled.  His leg involved a rod to be placed surgically, after this accident, into the victim's leg. The Defendant in this case failed to stop, help or feloniously -- let me back up, your Honor.

Following said accident did knowingly, willfully, unlawfully and feloniously failed to remain at the scene of said accident and provide information and render reasonable assistance as required. by the statute 63-3-405.

**THE COURT:**  Do you have any disagreement with either of those factual basis, Mr. Wilson?

A.   No, sir.

**Exhibit 13**, pgs. 10-11.  Wilson was sentenced to "serve a term of **FIVE (5) YEARS IN CAUSE NUMBER 30040 (CT II)** … in the custody of the Mississippi Department of Corrections." **Exhibit 12**, at RC 133 (emphasis in original).  Plaintiff remains in the custody of MDOC as a result of the guilty plea.  *See* https://www.ms.gov/mdoc/inmate/Search/GetDetails/L7689.

Despite pleading guilty to the charge of assaulting Apostolidis on December 6, 2018, Plaintiff disputes that criminal charge in the instant litigation and asserts that he is wholly innocent of the charge.  *Omnibus Hearing Transcript* (Exhibit 14), pg. 19.  Because Plaintiff's claims in the instant matter are barred by *Heck* and its progeny and the Defendants' entitlement to qualified immunity, in addition to the claims being factually and/or legally

without merit and frivolous, Defendants respectfully request that this Court grant their instant motion for summary judgment.

III.   **LEGAL PRECEDENT & ANALYSIS**

A.   **Rule 56 Standard of Review**

Rule 56 of the *Federal Rules of Civil Procedure* authorizes the granting of summary judgment in favor of the moving party when it is demonstrated that there exists no genuine issue of material fact precluding the granting of judgment in the movant's favor.  FED. R. CIV. P. 56.  When presented with a summary judgment motion, the Court must "examine each issue in the light most favorable to the non-moving party."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).  In the Court's review, however, it "must distinguish between evidence of disputed facts and disputed matters of professional judgment," the latter of which affords "deference to the views of prison authorities." *Beard v. Banks*, 548 U.S. 521, 530 (2006). Unless a plaintiff can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

B.   **The Individual Capacity Defendants are Entitled to Qualified Immunity**

Demetre Apostolidis, David King, Tyson Burleson, and Sheriff Bryan Bailey, in their individual capacity, are entitled to qualified immunity, and thus, personal immunity from the claims asserted against them. Qualified immunity is a shield from individual liability for "government officials performing discretionary functions ... as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).  "[Q]ualified immunity generally protects 'all but the plainly incompetent or

those who knowingly violate the law.'"  *Id.* (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Once "an officer invokes QI, 'the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact [dispute] as to whether the official's allegedly wrongful conduct violated clearly established law.'"  *McCoy v. Alamu*, 950 F.3d 226, 230 (5th Cir. 2020) (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)).  In order to meet his burden and overcome a Rule 56 motion, Plaintiff "must show that (1) 'the officer violated a federal statutory or constitutional right' and (2) 'the unlawfulness of the conduct was clearly established at the time.'"  *McCoy*, 950 F.3d at 230 (quoting *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019)).

Plaintiff cannot rebut the QI defense raised by Defendants and all claims against them should be dismissed with prejudice.

i.    Claims Against Apostolidis, King, and Burleson

Plaintiff alleges two claims against Apostolidis, King, and Burleson in his [1] Complaint related to the incident on December 6, 2018 – *i.e.*, excessive force and failure to provide medical care.  These Defendants are entitled to qualified immunity from both claims.

a.    **Excessive Force**

Plaintiff was a pretrial detainee on December 6, 2018, and thus, his constitutional rights stemmed from the Fourteenth Amendment.  *See Waddleton v. Rodriguez*, 750 F. App'x 248, 253 n.7 (5th Cir. 2018).  When analyzing an excessive force claim under the Fourteenth Amendment, the following six (6) *Kingsley / Hudson* non-exclusive factors "bear on the reasonableness or unreasonableness of the force used:"

(1) the relationship between the need for the use of force and the amount of force used;

(2) the extent of the plaintiff's injury;
(3) any effort made by the officer to temper or to limit the amount of force;
(4) the severity of the security problem at issue;
(5) the threat reasonably perceived by the officers; and
(6) whether the plaintiff was actively resisting.

*Brown v. Rodriguez*, No. CV SA-15-CA-396-PM, 2016 WL 1453500, at *8–9 (W.D. Tex. Apr. 12, 2016) (citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015); *see also Cry v. Dilliard*, No. 3:15cv318-DPJ-FKB, 2017 WL 2172944, at *3 (S.D. Miss. May 16, 2017). This Court must make its determination "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Cry*, 2017 WL 2172944, at *3.

The *Kingsley* Court explained that excessive-force cases involve two distinct "state-of-mind" inquiries: The first concerns the defendant's state of mind with respect to his physical acts – *i.e.*, his state of mind with respect to the bringing about of certain physical consequences in the world. The second question concerns the defendant's state of mind with respect to whether his use of force was "excessive." *Id.* at 2472. The Court explained that excessive-force claims necessarily require a showing or, as was true in *Kingsley*, a stipulation that the defendant purposefully or knowingly used force, narrowing the state-of-mind inquiries in excessive-force cases down to questioning the "interpretation" of that use of force – *i.e.*, the defendant's state of mind in relation to whether the use of force was excessive. *Kingsley*, 135 S. Ct. at 2472, 2475. Thus, the Court held that the excessiveness of the use of force must be gauged through an objective standard – as opposed to subjectively asking whether the defendant intended to use force excessively – while the initial use of force itself must occur knowingly or on purpose. "Whether the force used was objectively reasonable

is a question of law for the Court to resolve." *Davis*, 2017 WL 4228659, at *3 (citing *Carnaby v. City of Houston*, 636 F.3d 183, 188 (5th Cir. 2011)).

The Fourteenth Amendment authorizes the use of force "not only when it is necessary to protect oneself from an imminent physical attack by an inmate, but [also] when it is necessary to control a 'recalcitrant inmate.'" *Drumm v. Valdez*, No. 3:16cv3482-M-BH, 2019 WL 7494443, at *4 (N.D. Tex. Dec. 3, 2019) (quoting *Brown v. Gusman*, No. CIV.A. 15-1491-DEK, 2015 WL 6827260, at *5-6 (E.D. La. Nov. 6, 2015) (citing *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000)) (further citations omitted). Where the force used is of a *de minimis* quantum, it is not actionable under either the Eighth Amendment (*see McCoy v. Alamu*, 950 F.3d 226, 233 (5th Cir. 2020) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992)) or the Fourteenth Amendment (*see Andrew v. St. Tammany Par. Prison*, No. CV 15-2105, 2016 WL 447680, at *9 (E.D. La. Jan. 15, 2016) (citing *Jackson v. Buckman,* 756 F.3d 1060, 1067 (8th Cir. 2014); *Bell v. Wolfish*, 441 U.S. 520, 539 n.21 (1979)); *but see McGuffey v. Blackwell*, 784 F. App'x 240, 243 (5th Cir. 2019) (quoting *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998)) ("Although 'the absence of serious injury is quite relevant to an excessive force inquiry,' that alone 'does not ... preclude relief.'"). Premised on the foregoing legal backdrop, it is clear the force used by Apostolidis, King, and Burleson on December 6, 2018 was constitutionally permissive.

The Court's first analysis should be based on Fifth Circuit precedent interpreting *Heck v. Humphrey*, 512 U.S. 477 (1994), which provides as follows:

> [A] convicted criminal may not bring a claim under 42 U.S.C. § 1983, if success on that claim would necessarily imply the invalidity of a prior criminal conviction. That is because we do not allow the use of § 1983 to collaterally attack a prior criminal proceeding, out of concern for finality and consistency. *See generally Ballard v. Burton*, 444 F.3d 391, 397 (5th Cir. 2006) (quoting *Heck*, 512 U.S. at 484-86, 114 S. Ct. 2364). So an inmate cannot bring a § 1983

claim for excessive use of force by a prison guard, if the inmate has already
been found guilty for misconduct that justified that use of force.

*Aucoin v. Cupil*, 958 F.3d 379, 380-81 (5th Cir. 2020); *see also Thomas v. Scott County*, No.

3:14cv328-CWR-LRA, 2015 WL 5009715, at *5 (S.D. Miss. Aug. 21, 2015) (quoting *Harvey v.*

*City of Brandon,* No. 3:14cv739–DPJ–FKB, 2015 WL 461811, at *3 (S.D. Miss. Feb. 4, 2015)

("*Heck* bars excessive force claims 'based on a single violent encounter during which the

officers [ ] used excessive force and [the plaintiff claims] he was wholly innocent.'").

Plaintiff was indicted on charges of assaulting Apostolidis, King, and Burleson, and

pleaded guilty to assaulting Apostolidis by punching him.  He was sentenced to five years

imprisonment on this charge, yet claims he is wholly innocent in the instant § 1983 action.

Accordingly, there can be no genuine issues of material fact as to the need for the use of force,

the severity of the security problem at issue, the threat reasonably perceived by the officers,

and/or whether the plaintiff was actively resisting.  Any argument by Plaintiff contrary to his

guilty plea on the charge of assaulting Apostolidis is barred by application of *Heck*.  Moreover,

because Plaintiff claims in the instant § 1983 matter that he is wholly innocent of the criminal

charge of assaulting Apostolidis, his excessive force claim is likewise barred by *Heck.*  For

these reasons, any and all claims against Apostolidis, King, and/or Burleson for excessive

force should be dismissed with prejudice.

Even if the Court did not grant summary judgment premised on *Heck*, it is clear that

Plaintiff did not suffer more than a *de minimis* injury.  Wilson can be seen in the booking cell

following the incident (**Exhibit 11**) and his booking photograph taken after the incident does

not show any injury.  **Exhibit 7-A**.  Plaintiff alleges that he lost a tooth during the altercation

on December 6, 2018, but this same tooth can be seen as missing after the auto accident

approximately a year and ½ earlier on September 14, 2017.  *See* **Exhibit 4**.  For these

additional reasons, any and all claims against Apostolidis, King, and/or Burleson for excessive force should be dismissed with prejudice.

b. **Medical Care**

Plaintiff alleges that he was denied medical care after the incident, but the video of Wilson in the booking cell following the incident (**Exhibit 11**) clearly shows him being assessment and/or treated by medical personnel. Plaintiff's medical records attached as **Exhibit 6** further evidence that he was treated by medical personnel on December 6, 2018.

Medical deprivation claims brought by a pre-trial detainee under the Fourteenth Amendment pursuant to § 1983 require the plaintiff to prove that the officers were deliberately indifferent to his / her serious medical needs. "[A] prison official is deliberately indifferent to a pre-trial detainee's serious medical needs in violation of the Fourteenth Amendment if he (1) was subjectively aware of the risk and (2) disregarded the risk by failing to take reasonable measures to abate it." *Burton v. Owens*, 511 F. App'x 385, 389 (5th Cir. 2013) (citing *Farmer v. Brennan,* 511 U.S. 825, 847, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). To impose liability, "the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* (quoting *Domino v. Tex. Dept. of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001); *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985)). Thus, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* (quoting *Farmer,* 511 U.S. at 844, 114 S. Ct. 1970).

Wilson was seen by medical personnel immediately after the incident at issue, his blood pressure was checked, and his general appearance was noted to be "good".  **Exhibit 6**, at RC 48.  In having Wilson assessed by medical personnel immediately after the incident, Defendants did not violate a clearly established Fourteenth Amendment right of Plaintiffs, and thus, they are entitled to qualified immunity.  Moreover, Plaintiff has not alleged that he suffered an injury as a result of any medical deprivation claim and such claim is barred by 42 U.S.C. § 1997e(e).

        ii.   <u>Claims Against Sheriff Bailey</u>

Plaintiff has not alleged any personal participation by Sheriff Bailey with the excessive force and/or medical deprivation claims alleged against the other Defendants. Because the claims before the Court are based on alleged "episodic act[s] or omission" by jail personnel, Plaintiff "must show subjective deliberate indifference" by Sheriff Bailey. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017) (quoting *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996)).  To do so, Plaintiff "must show that the official knew of and disregarded a substantial risk of serious harm." *Alderson*, 848 F.3d 419-20 (citing *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001)). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Id.* at 420 (quoting *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)).

Sheriff Bailey cannot be liable under a theory of vicarious liability and/or *respondeat* superior, but instead can only be found individually liable under 42 U.S.C. § 1983 on the basis of his own personal participation in the wrongful conduct.  *Alderson*, 848 F.3d at 420 (citing *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992)).  "Supervisory officials are

accountable for their own acts of deliberate indifference and for implementing unconstitutional policies that causally result in injury to the plaintiff." *Id.* Any alleged conduct against the supervisory officials "must be based on more than the right to control employees, or simple awareness of employees' misconduct." *Laneri v. King*, No. 1:14cv234-LG-RHW, 2015 WL 5943013, at *3 (S.D. Miss. Oct. 13, 2015) (citing *Leary v. Daeschner,* 349 F.2d 888, 903 (6th Cir. 2003)).

Plaintiff's only allegation against Sheriff Bailey is that this Defendant failed to investigate his claims against Apostolidis, King, and Burleson. Even assuming *arguendo* that this allegation was true, which is denied, Sheriff Bailey's alleged failure to investigate a pre-trial detainee's claims "do not give rise to a constitutional claim." *Smith v. Dixon*, No. 3:11cv25-MTP, 2012 WL 3068769, at *5 (S.D. Miss. July 27, 2012) (citing *Dehghani v. Vogelgesang*, 226 F. App'x 404, 406 (5th Cir. 2007) (holding that plaintiff's allegation that warden failed to adequately investigate his grievance did not amount to a constitutional violation) (additional citations omitted). "Moreover, Plaintiff has no constitutional right to a grievance procedure and has no due process liberty interest right to having his grievance resolved to his satisfaction." *Smith*, 2012 WL 3068769, at *5 (citations omitted).

Accordingly, any and all claims against Sheriff Bailey fail as a matter of law and Sheriff Bailey, in his individual capacity, is entitled to summary judgment.

C.    **Plaintiff failed to plead any *Monell* claims against Defendants, in their official capacity**

Plaintiff is not clear in his pleadings whether his claims are against the Defendants, in their official capacity. Out of an abundance of caution, Defendants briefly address any such claims, if any. "It is well-settled that a claim against an official in his official capacity 'is not a suit against the official but rather is a suit against the official's office' and is therefore 'no

different from a suit against the [municipality] itself.'" *Skinner v. Hinds County*, No. 3:10cv358-DPJ-FKB, 2014 WL 317872, at *7 (S.D. Miss. Jan. 29, 2014) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted)).

To prove Rankin County is liable in this litigation, Plaintiff must provide competent summary judgment evidence of "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom.'" *Harris v. Jackson County*, 684 F. App'x 459, 463 (5th Cir. 2017) (quoting *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010); *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)). Plaintiff has not alleged any of these elements in any of the pleadings before this Court and his claims against Rankin County should, thus, be dismissed pursuant to FED. R. CIV. P. 8.

### D.  Plaintiff's Claims for Injunctive Relief are Moot

Plaintiff various forms of injunctive relief from Defendants in the instant litigation. It is uncontested that Plaintiff is no longer incarcerated in the Rankin County Jail, and accordingly, his claims for injunctive relief are moot. *See Stern v. Hinds County*, 436 F. App'x 381 (5th Cir. 2011) (citing *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001)) ("Stern's request for injunctive relief became moot upon his transfer from the Hinds County Detention Center in Jackson, Mississippi, to various facilities of the Mississippi Department of Corrections."). Moreover, Plaintiff does not have a constitutional right to bring assault charges against Apostolidis, King, and Burleson. *See Gerhart v. Rankin County*, No. 3:11cv586-HTW-LRA, at [Dkt. 122], pg. 17 (S.D. Miss. Mar. 30, 2015) (quoting *Leeke v. Timmerman*, 454 U.S. 83, 86-87, 102 S. Ct. 69, 70 L. Ed. 2d 65 (1981)) ("The right to 'access the courts' does not guarantee a right to the criminal prosecution of another.").

In addition to Plaintiff's claims for injunctive relief being frivolous as a matter of law, they are also frivolous as a matter of fact.  Wilson seeks to have his "tooth replaced, by gum implant, not a plate" (**Exhibit 1**, pg. 5) and asserts that his front left tooth was knocked out during the altercation, not prior.  (**Exhibit 14**, pgs. 19-20).  It is clear from the September 14, 2017 Brandon P.D. body cam video (*see* **Exhibit 4**) that Plaintiff was missing his left front tooth at least a year prior to the incident at issue on December 6, 2018, and his claim that it was knocked out during the incident is frivolous as a matter of fact.

For the foregoing reasons, any and all claims for injunctive relief should be dismissed with prejudice.

E.    **Dismissal of Plaintiff's Claims Should Count as a Strike per the PLRA**

This Court shall dismiss a claim brought pursuant to the PLRA "at any time" if the plaintiff's claim is deemed to be "frivolous or malicious", or "fails to state a claim on which relief may be granted." *McGuffey*, 784 F. App'x at 242; 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).  If a prisoner has "on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted," that prisoner will be barred from filing additional litigation or appeals per the PLRA.  § 1915(g).  "A complaint is frivolous 'where it lacks an arguable basis either in law or in fact.'" *McGuffey*, 784 F. App'x at 242 (quoting *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)); *see also Wilson*, No. 2:13cv021-KS-MTP, at [Dkt. 15], pg. 5 (Finding that the instant Plaintiff's claims were frivolous where he failed to allege a constitutional violation).

Defendants submit that all claims filed by Plaintiff in the instant litigation are frivolous as a matter of law and/or fact. For the foregoing reasons, Plaintiff has failed to allege in the instant litigation that his Fourteenth Amendment rights were violated by any of the Defendants and any dismissal of his claims should count as a strike per the PLRA.

IV.    **CONCLUSION**

For the above-mentioned reasons, Demetre Apostolidis, David King, Tyson Burleson, and Sheriff Bryan Bailey are entitled to judgment in their favor and respectfully request that this Court grant their Motion for Summary Judgment, counting such dismissal with prejudice as a strike pursuant to the PLRA.

**RESPECTFULLY SUBMITTED,** this the 22nd day of July, 2020.

> **DEMETRE APOSTOLIDIS, DAVID KING, TYSON BURLESON, AND SHERIFF BRYAN BAILEY, DEFENDANTS**
>
> **BY:**    _/s/ Jason E. Dare_____
>    **JASON E. DARE**

**OF COUNSEL:**

Jason E. Dare (MSB No. 100973)
jdare@bpislaw.com
BIGGS, PETTIS, INGRAM & SOLOP, PLLC
Post Office Box 14028
Jackson, Mississippi  39236-4028
Telephone:    (601) 713-1192
Facsimile:    (601) 987-5307

## CERTIFICATE OF SERVICE

I, Jason E. Dare, hereby certify that on this day, I conventionally filed the foregoing with the Clerk of the Court and mailed, via U.S. Mail, postage pre-paid, a true and correct copy of the above and foregoing document to the following non-ECF participant(s):

Jarret Montez Wilson, #L7689
C.M.R.C.F
33714 Highway 35
Vaiden, MS 39176

**THIS,** the 22nd day of July, 2020.

/s/ Jason E. Dare
**JASON E. DARE**